**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**J.B. HAIRSTON, Defendant-Appellant.**

No. 83–3267.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1985.

Decided May 15, 1985.

David E. Risley, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee.

Alan M. Freedman, Chicago, Ill., for defendant-appellant.

Before BAUER, Presiding Judge, COFFEY, Circuit Judge, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

Appellant, J.B. Hairston appeals from his conviction under Section 1202(a)(1) of Appendix of Title 18 U.S.C., the federal statute which makes it a crime for a convicted felon to possess a firearm. Appellant was arrested by a deputy sheriff in Kankakee, Illinois in July, 1983, upon a police dispatcher's report that Hairston's license was suspended. Following the arrest, a search of his person produced the firearm in question. After the arrest and search, it was discovered that appellant in fact had a valid driver's license, and that the person whose license had been suspended was Jay B. Hairston of Kankakee, the son of appellant.

Prior to trial, appellant moved to suppress the firearm and his subsequent confession on the basis of illegal search and seizure. After an evidentiary hearing, the district court denied the motion. The legality of appellant's arrest is the only issue before us on this appeal.

Appellant contends that because erroneous information concerning his driver's license was communicated to the arresting officer, there was no probable cause for his arrest, and therefore the subsequent search which produced the firearm was unlawful.

The facts concerning Hairston's arrest and search, as found by the trial court, are without dispute. They may be summarized as follows:

On July 1, 1983 Hairston was driving east on Route 17, near the intersection with Highland Avenue in Kankakee County, Illinois, about 11:30 p.m. At that time he had two passengers in the car. Hairston passed a patrol car containing two county deputy sheriffs, and then pulled over and stopped after the deputies signaled him to stop. When he asked Deputy Morefield what was wrong, he was told that one of his headlights was out. One of the headlights was in fact out, and at the time of the stop, there was an observable traffic violation by the vehicle that Hairston was driving. Deputy Morefield asked Hairston for his driver's license, and returned to the police car to check the information on the license. It was unclear from the evidence whether Hairston gave his license to Morefield or whether he did not have his license and told Morefield his name and date of birth.

Upon checking with the Kankakee County Dispatcher's office, Morefield was told that Hairston's license to drive was suspended. In providing this information the dispatcher's checked a computer used by the Sheriff's Department and also checked the cards held by the Department from the Illinois Secretary of State's Driver's Service Department. These checks resulted in information that J.B. Hairston, resident of Kankakee, was a suspended driver.

It was later revealed by the evidence that the "J.B. Hairston" of Kankakee whose license was suspended was Jay B. Hairston, the son of appellant. At the time of the arrest, the appellant was a person of 55 years of age, and his son, Jay B. Hairston was a man 30 years of age. Neither of the officers had a specific recollection of verifying the date of birth of the person upon whom the license check was run.

The date of birth did not make an impression upon the officers in the course of running the license check. The thing which did impress them was that a "J.B. Hairston" of Kankakee, Illinois, had his license suspended, and the sheriffs had stopped a person who met that identification, namely, a J.B. Hairston of Kankakee, Illinois.

After the information was received from the dispatcher, Deputy Morefield told appellant that he was under arrest, and would

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas, is sitting by designation.

be taken to the Detention Center. He was searched and found to possess the firearm in question. The search was made because Hairston was to be placed in the police vehicle and transported to the Detention Center. Hairston was searched as a routine precaution.

Upon these facts the trial court found that Deputy Morefield had both a subjective and objective belief that Hairston was a person driving without a valid license, and so subject to arrest.

■■■■■ The test for probable cause for arrest without a warrant is set out in *Beck v. Ohio*, 379 U.S. 89, at 91 and 94, 85 S.Ct. 223 at 225 and 227, 13 L.Ed.2d 142, at 145 and 148.

"The constitutional validity of the search ... must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.... 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Brinegar v. United States, supra*, 338 U.S. [160] at 176 [69 S.Ct. 1302 at 1311], 93 L.Ed. [1879] at 1891." (at 91, 85 S.Ct. at 226, 13 L.Ed.2d at 145).

\* \* \* \* \* \*

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. *Carroll v.*

*United States*, 267 U.S. 132, 162 [45 S.Ct. 280, 288], 69 L.Ed. 543, 555...." (at 96, 85 S.Ct. at 228, 13 L.Ed.2d at 148).

■■■ Appellant relies upon *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) in which the arresting officer relied upon an invalid arrest warrant which had been obtained without probable cause by a sheriff in another jurisdiction. The court held that the invalid arrest warrant could not be made valid, because the arresting officer did not possess any independent information which would support a finding of probable cause. Here, in determining the question of probable cause, Deputy Morehead was entitled to rely upon and to act in response to information he received in his independent investigation into the status of appellant's driver's license. Under the undisputed facts recited above, which include a valid traffic stop at night, a routine check by Morehead through the Dispatcher's Office, the receipt of information which later proved to be incorrect because of the similarity of names and addresses, we determine that Deputy Morehead acted as a reasonably prudent person in concluding that there was probable cause for Hairston's arrest. The subsequent search was incident to such lawful arrest, and the trial court properly denied the Motion to Suppress. *United States v. Roper*, 702 F.2d 984, 989 (11 Cir.1983); *United States v. McDonald*, 606 F.2d 552 (5 Cir.1979); *Hill v. Bogans*, 735 F.2d 391 (10 Cir.1984); *United States v. Salinas-Calderon*, 728 F.2d 1298 (10 Cir.1984).

The Judgment is AFFIRMED.