Isaac James JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–0602–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 7, 1986.

Herb H. Ritchie, Houston, for appellant.

John B. Holmes, Jr., Harris Cty. Dist. Atty., Kathy Giannaula, David Brothers, Harris Cty. Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, LEVY and DUNN, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of aggravated robbery, found the enhancement allegation of the indictment to be true, and assessed his punishment at 40 years confinement.

Appellant's first two grounds of error urge that: (1) the evidence was insufficient to support conviction in that the State failed to prove that the complainant named in the indictment was the owner of the property; and (2) the trial court erred in overruling his motion for instructed verdict urging that the State failed to prove ownership of the property in the named complainant, a requisite element of the offense of robbery.

The indictment charged aggravated robbery by use of a firearm, and alleged ownership of property to be in Lidia Marquez as the complainant.

The undisputed evidence shows that Marquez was a full-time employee of Church's Fried Chicken at Main and Prairie Streets in downtown Houston, and that she was on duty at 8:05 p.m. on September 27, 1984, when appellant and his two companions entered the restaurant. Marquez's duties included serving chicken, preparing food, cleaning tables, and cleaning the restaurant after it closed. Marquez was behind the counter placing fried chicken in the display tray under the "hot lights" when appellant entered.

Appellant approached Marquez, asked her if she knew what he had, and showed her a pistol. She said, "Yeah, a gun," and he said, "It's a hold-up." Appellant then told Marquez to move close to the register, and she did. He told her to open the register, and the complainant tried to do so. However, she had not been trained to use the cash register, had never opened it before, and did not "have any idea how to open it." She told appellant, "I don't know how to open this. My work is just to serve the people." Appellant told her that she should know, and the complainant asked him why he didn't call the assistant manager. Appellant told her to move to the other register and attempt to open it. Appellant, who appeared nervous, had his finger "in the trigger," kept the weapon constantly pointed at the complainant's chest, and repeatedly said, "Give me the money, you bitch, or I'll kill you." One of appellant's companions asked appellant to give him the pistol so he could kill the complainant, but the appellant kept the gun. His second companion spoke up at this time to say that

another employee had fled out the side door to call the police. Appellant and his two companions then "took off running," out the Prairie Street exit. Carol Stubblefield, a Church's Fried Chicken employee whose duties included working the cash register during this time, was outside the restaurant emptying trash throughout the entire period of appellant's confrontation with Marquez. Another Church's employee did in fact flee outside and tell Stubblefield of the robbery. Stubblefield flagged down a passing officer, and pointed out appellant and his running companions to the officer. The officer arrested appellant in a near-by bar and recovered the pistol he observed appellant place on the floor. Appellant was returned in custody to the restaurant within minutes of his arrest, and was there identified by the complainant.

Undisputed testimony showed that Lidia Marquez did not lose any of her own personal property, and that appellant did not have "any right to any property in Church's Fried Chicken at all." Ms. Marquez acknowledged that she did not own, "in the sense of the word that it was [her] personal property—any of the money that might have been in Church's Fried Chicken."

She testified that she had no authority to work the cash register, had no control over it, had never operated it before the robbery, and did not know how. She further testified that she had no control over the restaurant's safe or cash registers, that they were not under her care, and that she had possession of nothing in either the safe or the cash registers.

The trial court properly charged the jury on the definition of "owner" in accordance with Tex.Penal Code Ann. sec. 1.07(a)(24) (Vernon 1974), which states:

> "Owner" means a person who has title to the property, possession of the property whether lawful or not, or a greater right to possession of the property than the actor.

Penal Code sec. 1.07(a)(28) defines "possession" as "actual care, custody, control or management."

As appellant and the State indicate in their respective briefs and arguments, the State introduced no evidence showing that Lidia Marquez had either title to or possession (that is, actual care, custody, control or management) of Church's cash register contents. The State relies on the third definition of "owner" in sec. 1.07(a)(24), i.e., that she had a greater right to care, custody, control or management of the property in question than the appellant.

Like other provisions of the Penal Code, this definition of "owner" must be "construed according to the fair import of [its] terms, to promote justice and effect the objects of the code." Sec. 1.05(a).

By amending sec. 1.07(a)(24) to create this third and distinct definition of ownership, the Legislature intended to expand the class of persons to be protected from theft, and to allow the State to prove ownership without having to prove *actual* care, custody, control or management of the property. *Compton v. State*, 607 S.W.2d 246, 250–51 (Tex.Crim.App.1980) (opinion on rehearing). *Cert. denied*, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981).

The evidence showed that Lidia Marquez was a full time employee of Church's, and that she was engaged in the discharge of her duties when appellant sought to compel her at gunpoint to open her corporate employer's cash register for appellant's benefit. Appellant and his companions were not employed by Church's, and he claims no legal right to ownership or possession of property in Church's cash register.

■ Legally, the fact that Marquez was an employee of Church's gave her a "greater right to possession" of the property than appellant. *Sherlock v. State*, 632 S.W.2d 604, 608 (Tex.Crim.App.1982). The jury so found factually. Applying the test of sufficiency of the evidence found in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Marquez, though without

fiscal or managerial responsibilities, had a greater right of possession of Church's property than appellant. *See Smallwood v. State*, 607 S.W.2d 911, 913–914 (Tex. Crim.App.1980) (opinion on rehearing) (department store employee, a loading dock worker, held to have greater right to possession of stolen goods than a thief).

Appellant cites *Compton v. State*, 607 S.W.2d 246 (Tex.Crim.App.1980) cert. denied, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981); *Cross v. State*, 590 S.W.2d 510 (Tex.Crim.App.1979); and *Sowders v. State*, 693 S.W.2d 448 (Tex.Crim. App.1985), as authority that some exercise of control over the property in question, even though limited, is essential for the requisite possession or ownership. We disagree. These holdings are distinguishable; *Cross* and *Sowders* involved theft by an employee with distinctions based on control, to show greater ownership in another employee. On rehearing, *Compton* directly supports the result here.

At the time of the robbery, Marquez was Church's only employee on hand and available for appellant to compel at gunpoint to attempt to open the register. Having forced and threatened her at gunpoint to attempt to operate the cash register, appellant ought not to be heard to complain that she had no authority to do so. We hold that she is within the statutory definition of "owner" as a person having a greater right to possession of the property than appellant.

Appellant's first two grounds of error are overruled.

■ Appellant alleges in his third ground of error that the trial court erred in overruling his motion to quash the indictment, which complained that the enhancement conviction lacked a jury trial waiver as required by arts. 1.13 and 1.15, of the Code of Criminal Procedure.

At the punishment phase of trial, the State introduced a penitentiary packet from Cause No. 278,077, the prior conviction alleged in the indictment for enhancement. The packet contained a judgment and sentence in that cause, the judgment reciting that the defendant had waived his right of trial by jury "in person and in writing, in open court ...," and with the consent and approval of the court and the district attorney. No written jury waiver was offered. Appellant argues that the packet's failure to include the written jury waiver renders the prior conviction unavailable for enhancement purposes because of his "motion showing that no jury waiver was executed."

Appellant acknowledges that the judgment recital of waiver of jury trial creates a presumption of regularity of documents in the trial court, unless a showing is made that no waiver was executed. *Breazeale v. State*, 683 S.W.2d 446 (Tex.Crim.App.1985) (opinion on rehearing). Appellant likewise concedes that he has the burden of showing that no waiver was executed. *Boyd v. State*, 660 S.W.2d 820 (Tex.Crim.App.1983). However, he argues that he has satisfied his burden and made a "showing" of a lack of waiver by filing his motion to quash the indictment. We disagree.

Appellant's motion to quash made the bare contention that the State did not affirmatively show an executed written waiver. Nowhere in the motion does he allege that he did not in fact sign a written waiver of his right to jury trial; neither does he offer evidence concerning the matter. Appellant's motion, simply complaining that the *State* has not offered proof of the waiver, is not a sufficient "showing" that a waiver was not executed.

In *Ex parte Felton*, 590 S.W.2d 471 (Tex. Crim.App.1979), a sufficient showing of non-waiver was held to have been made by attaching a copy of the filed jury waiver form, which indicated a blank space where the defendant's signature should have been. In *Boyd v. State*, 660 S.W.2d 820, 821 (Tex.Crim.App.1983), a sufficient showing of non-waiver was made concerning one of six concurrent guilty pleas by the appellant's introduction of a jury waiver form showing five cause numbers only, but excluding the sixth cause number. Because no evidence was offered by appellant, we

conclude that there was no showing made of the lack of jury waiver. Appellant's third ground of error is overruled.

The judgment is affirmed.